UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHENGNING LANG,<br><br>    **Plaintiff / Counterclaim Defendant,**<br><br>v.<br><br>SUJITECH, LLC D/B/A MASK NETWORK, HAN YAN,<br><br>    **Defendants / Counterclaim Plaintiffs**<br><br>v.<br><br>1,545,154 USDT,<br><br>    ***In rem* Defendant**<br><br>v.<br><br>BYBIT TECHNOLOGY LIMITED,<br><br>    **Relief Defendant.** | Civ. No. 2:25-cv-12175 (WJM)<br><br>OPINION |

    In this employment discrimination action, Defendants/Counterclaim Plaintiffs Han Yan ("Yan") and Sujitech, LLC D/B/A/ Mask Network (jointly "Counterclaimants") move pursuant to Fed. R. Civ. P. 65 for a preliminary injunction requiring Shengning Lang ("Plaintiff" or "Lang") to return allegedly stolen cryptocurrency and other property. ECF No. 18. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Counterclaimants' motion for a preliminary injunction is **denied.**

**I.   BACKGROUND**

    Yan, a citizen of China, is the founder and owner of Sujitech, LLC ("Sujitech") and Mask Network. Counterclaim ¶ 18. Sujitech is an Illinois company that operates Mask Network. *Id.* at ¶ 19. Mask Network creates and maintains software that integrates blockchain benefits, also referred to as "Web3" features, with existing "Web2" internet

1

platforms such as Facebook and Twitter. *Id.* at ¶ 23. Mask Network has a token[1] associated with its technology platform, known as the "MASK" token. *Id.* at ¶ 12. Mask Network maintains the bulk of its financial assets in cryptocurrency, including in accounts at trading platforms such as Binance and OKX. *Id.* at ¶ 24.

Plaintiff Lang, a Chinese citizen and New Jersey resident, was employed by Sujitech as a financial analyst from 2022 to early April 2025. Compl. ¶¶ 6, 26. In March 2024, Lang was promoted to Regional Managing Director of Operations. *Id.* at ¶ 31. Plaintiff was terminated from Sujitech in April 2025. *Id.* at ¶ 79. On June 26, 2025, Plaintiff instituted this action, based on diversity jurisdiction, asserting claims under the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, and state common law. Specifically, Plaintiff alleges that her termination was retaliation for her objections to Yan's refusal to file tax returns and to comply with relevant tax law, and that Yan sexually harassed her and created a hostile work environment.

Sujitech and Yan in turn filed counterclaims for violations of the Computer Fraud and Abuse Act, common law conversion, common law fraud, breach of the duty of loyalty, unjust enrichment, and replevin. For purposes of authorized transactions including payroll, Lang in her role at Sujitech, had access to Mask Network's internal network, including certain crypto asset accounts and wallets holding company assets. Counterclaim ¶ 27. Beginning on or about April 1, 2025, Lang purportedly transferred and improperly retained company funds. Counterclaimants accuse Lang of stealing $1,545,154 in assets (the "Subject Assets") from Sujitech's Binance account, unauthorized downloading of 31,286 computer files (an assortment of technical, financial, and operational documents) from Mask Network computers, and theft of personal property (clothes, jewelry, electronics, Mercedes SUV) from Yan and his wife. *See id.* at ¶ 37; Yan Decl. ¶¶ 23-26, ECF No. 18-2. *In rem* defendant 1,545,154 is the cryptocurrency that Counterclaimants pled has been stolen by Lang. Counterclaim ¶¶ 21, 37. Relief Defendant Bybit ("Bybit") is a cryptocurrency exchange that is currently in possession of the 1,545,154 USDT[2] purportedly stolen from Counterclaimants. *Id.* at ¶ 22.

On or about April 10-11, 2025, Yan obtained Bybit's cooperation to have Lang's account frozen, but Bybit stated it could only temporarily freeze the account for 7 days and would "try to hold as long as we can." Yan Decl. ¶ 21 Ex. 4, ECF No. 18-6. Sujitech and Yan now seek a preliminary injunction to enjoin Lang from disposing of or dissipating the Subject Assets, disgorge and transfer the Subject Assets back to Counterclaimants, physically transfer Yan's personal property to Yan or his agents, and delete all of Sujitech's downloaded files.

---

[1] "In the simplest terms, a token is a digital representation of an asset, value, or utility, commonly used within the framework of blockchain technology." Token Definition: How They Work and Why They Matter

[2] USDT, or Tether, is a type of cryptocurrency pegged to the U.S. dollar. *See* What Is Tether (USDT)? Understanding Its Importance and Uses

2

## II. DISCUSSION

A. <u>Standard for Preliminary Injunction</u>

A preliminary injunction is an extraordinary remedy that should not be routinely granted. *See, e.g., Groupe SEB USA v. Euro–Pro Operating LLC,* 774 F.3d 192, 197 (3d Cir. 2014); *Hoxworth v. Blinder, Robinson Co. Inc.,* 903 F.2d 186, 189 (3d Cir. 1990). Moreover, "the decision to grant or deny a preliminary injunction is committed to the sound discretion of the district court." *U.S. v. Price,* 688 F.2d 204, 2010 (3d Cir. 1982). The extraordinary remedy of a preliminary injunction requires the moving party to show (1) it is likely to succeed on the merits; (2) denial will likely cause it irreparable harm; (3) the balance of equities tips in favor of the moving party; and (4) granting the injunction is in the public interest. *Nutrasweet Co. v. Vit–Mar Enterprises,* 176 F.3d 151, 153 (3d Cir. 1999); *Securities & Exchange Comm. v. Chappell,* 107 F.4th 114, 126 (3d Cir. 2024). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,* 428 F.3d 504, 508 (3d Cir. 2005) (citations omitted). "Generally, the moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two factors." *Chappell,* 107 F.4th at 126 (citing *Greater Phil. Chamber of Com. v. City of Phil.,* 949 F.3d 116, 133 (3d Cir. 2020)). "If the gateway factors are met, the court then determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* (cleaned up).

For the reasons set forth below, the Court finds that Sujitech and Yan have not established the probability of irreparable harm. Accordingly, the Court does not reach the remaining factors and **denies** Counterclaimants' motion for a preliminary injunction.

B. <u>Irreparable Harm</u>

A preliminary injunction requires that the feared injury or harm is "not merely serious or substantial," but "of a peculiar nature, so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.,* 809 F.2d 223, 226 (3d Cir. 1987) (cleaned up). Hence "an injury measured in solely monetary terms cannot constitute irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.,* 562 F.3d 553, 557 (3d Cir. 2009) (citing *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP.,* 528 F.3d 176, 179 (3d Cir. 2008)). *See also In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1145 (3d Cir. 1982) ("[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."). Counterclaimants do not contend that loss of cryptocurrency cannot be measured in monetary terms. While courts have found that in some cases involving theft of cryptocurrency, the failure to promptly freeze the cryptocurrency would lead to irreparable harm, those are cases in

3

which the defendants' identities were unknown making the loss of any chance of recovery and irreparable harm likely due to the speed and anonymity of cryptocurrency transactions. *See JustM2J LLC v. Brewer*, No. 25-00380, 2025 WL 435827, at *7 (E.D. Cal. Feb. 7, 2025) ("In making the determination of whether monetary damages are actually available and therefore would provide sufficient relief in cryptocurrency fraud cases, courts have looked to factors such as whether the defendants' identities are known, whether the fraudulent scheme is ongoing, and the defendants' conduct in the litigation."). *See, e.g., Mirashi v. Doe*, No. 25-1805, 2025 WL 893003, at *4 (D.N.J. Mar. 21, 2025) (citing cases); *Jacobo v. Doe*, No. 22-00672, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022). Here, the identity of Plaintiff/Counterclaim Defendant is not unknown and there is no allegation that the fraudulent scheme is ongoing.

Even if monetary loss constituted irreparable harm, the harm must also be "immediate" or a "presently existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir.1994). Counterclaimants' nearly 4-month delay in bringing a preliminary injunction motion on August 4, 2025 "'undermine[s] an asserted claim of imminent, irreparable harm.'" *Newton AC/DC Fund L.P. v. Hector DAO,* No. 24-722, 2024 WL 580182, at *4 (D.N.J. Feb. 13, 2024) (noting that 7 month-delay in filing suit indicated harm was less clear than plaintiff claimed) (citing *Vita-Pure, Inc. v. Bhatia*, No. 14-7831, 2015 WL 1496396, at *4 (D.N.J. Apr. 1, 2015)).

Moreover, the alleged irreparable harm cannot be not merely a "possibility," but rather, "is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008); *ECRI,* 809 F.2d at 226 ("Establishing a *risk* of irreparable harm is not enough." (emphasis added)). *See e.g., Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996) (finding district court's freeze order was proper in "extraordinary case" in which jury had already determined defendant had fraudulently dissipated assets). Just "because it is *easy* for a defendant to dissipate [cryptocurrency] assets does not make it *likely* that he will do so." *Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston,* 697 F. Supp. 3d 1265, 1272 (D. Utah 2023). Counterclaimants speculate that absent an injunction, it is reasonable to infer that Ms. Lang "*might* formulate a new plan" to "get around the current freeze." Prelim. Injunction Br. 20-21. Nothing Counterclaimants present to the Court supports such an inference even if Bybit unfreezes Ms. Lang's account. Similarly, Counterclaimants make a blanket statement that Ms. Lang's retention of files "*could* undercut Mask Network's competitive advantage or lead to other cybercrimes being perpetrated against it," but that is also pure conjecture. *Id.* at 22. In addition, while Counterclaimants note that the exchange where the funds are stored was recently hacked for billions, the possibility that monetary loss *may* occur is insufficient to show that irreparable harm is *likely*.

Next, Counterclaimants argue that any monetary loss would be irreparable because Lang does not have assets that would enable her to pay a judgement in the event of a final disposition on the merits. *See Hoxworth,* 903 F.2d at 206 ("unsatisfiability of a money

4

judgment can constitute irreparable injury."). However, Counterclaimants offer no support for that bald assertion. *See Newton*, 2024 WL 580182, at *3–4 (finding no irreparable injury where plaintiff did not make showing that defendants were likely unable to pay an award of money damages); *JustM2J LLC,* 2025 WL 435827, at *7–8 (citing cases and finding that plaintiff did not demonstrate likelihood of irreparable harm given delay in seeking emergent relief and failure to show monetary damages were likely to be unavailable).

Finally, Counterclaimants argue that Lang is a Chinese national with tenuous immigration status and so may not be found in the jurisdiction at the time of a final judgment or disposition on the merits. Sujitech and Yan cite no legal authority that suggests that the irreparable harm prong is satisfied merely because the non-moving party is not a U.S. citizen. Nor do they offer any factual basis for their speculation that Lang may flee this jurisdiction. In addition, Counterclaimants have not shown that there is no chance of enforcing any court judgment in China. *See e.g., AngioDynamics, Inc. v. Biolitec AG,* 910 F. Supp. 2d 346, 357 (D. Mass. 2012).

Because Counterclaimants fail to make a "clear showing of immediate irreparable injury" or a "presently existing actual threat," the Court need not examine the remaining factors to determine that the issuance of a preliminary injunction is inappropriate.

### III. CONCLUSION

For the reasons noted above, Counterclaimants' motion for a preliminary injunction is **denied.**

Date: September 23, 2025

_____
WILLIAM J. MARTINI, U.S.D.J.